```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____
JOSE M. VELAZQUEZ

                      Plaintiff,              06-CV-0343

      v.

                                                        **DECISION**
JO ANNE BARNHART, COMMISSIONER OF        **and ORDER**
SOCIAL SECURITY

                      Defendants.
_____

## __INTRODUCTION__

Plaintiff Jose M. Velazquez ("plaintiff" and/or "Velazquez"), brings this action pursuant to Title XVI of the Social Security Act ("Act"), codified at 42 U.S.C. § 405(g) claiming that the Commissioner of Social Security ("Commissioner") improperly denied his application for disability benefits. Specifically, Velazquez alleges that the decision of the Administrative Law Judge ("ALJ") who heard his case and denied his application was erroneous because it was not supported by the substantial evidence in the record.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. The plaintiff has also moved for judgment on the pleadings.

## __BACKGROUND__

On September 4, 1997, plaintiff then aged 38 years old, applied for disability insurance benefits alleging disability since March 24, 1997 due to depression, diabetes, and back pain. Plaintiff's application was denied initially and again on

reconsideration. Thereafter, plaintiff requested an administrative hearing, which was held before ALJ Nestor E. Vega Soto in Mayaguez, Puerto Rico on May 18, 1999. In a decision dated July 13, 1999, the ALJ found that the plaintiff was not under a disability. The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to assume jurisdiction on September 27, 2001. Plaintiff filed this action on May 25, 2006.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal

standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." See Lynn v. Shweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). The plaintiff claims that the ALJ's decision that he is not disabled is legally deficient due to insubstantial development of the evidence and because he did not apply proper legal standards. Consequently, the plaintiff moves for an order reversing the ALJ's decision and remanding the case for further administrative action. A remand to the Commissioner for further development of the evidence under 42 U.S.C 405(g) is appropriate when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1980)). Because the court determines that there are legal errors in the ALJ's decision and that further development of the evidence is appropriate, the plaintiff's motion for reversal of the ALJ decision and remand for further administrative proceedings is granted.

### II. **The ALJ Gave Improper Weight To The Opinion Of A Non-treating, Non-examining Psychiatrist In Determining The Plaintiff's Claim of Disability**

Plaintiff complained of severe psychiatric symptoms, claiming that he had hallucinations and heard voices telling him to kill himself. In addition, he saw shadows and heard knocking

on his window, but never found anyone there. He had problems getting along with his neighbors, thinking they were always laughing at him and that he sometimes felt like killing them. He also was continuously awakened by voices during the night, severely interfering with his ability to sleep. (T. 399). Further, he described his relationship with his wife as "bad" and that he argued with relatives. He also had "no interest in anything" spending "all of [his] time inside [his] house, far away from the world." Moreover, he indicated that he did not care about his personal care and hygiene.

During a June 1998 examination by a consultative psychiatrist, Dr. Diaz Hernandez, the plaintiff reported that his depression had worsened, and that he felt tired, useless, and had death wishes, poor concentration, poor impulse control, auditory hallucinations, anhedonia and was unable to make decisions. Plaintiff was not participating in any social activities, spent his entire day at home in isolation, and had "distant" relations with his neighbors. He further needed coaching with his personal hygiene and needed supervision to complete tasks. In addition, plaintiff's concentration and short term memory were poor, and he was thought unable to handle funds. Three physicians, including plaintiff's treating doctor found that plaintiff's subjective complaints were consistent with a diagnosis of major depression.

Dr. Diaz Hernandez found plaintiff's facial expression to be depressed and tense and found evidence of motor signs of tension, including restlessness. She also indicated that plaintiff's mood

was anxious and depressed. Plaintiff described death wishes and feelings of worthlessness. He related a history of having hallucinations and was unable to recite the month of the year or the days of the week backwards. On the basis of these findings, Dr. Diaz Hernandez diagnosed plaintiff with major Depression recurrent with psychosis. The State Agency Review Physician also found that plaintiff suffered from depression that moderately limited the plaintiff in a variety of mental functioning domains. Finally, plaintiff's treating psychiatrists consistently reported severe psychiatric symptoms, and rendered a diagnosis of major depression with psychotic traits. In notes dated November 13, 1998 and April 28, 1999, Dr. R. Rivera, psychiatrist stated that she treated the claimant since September 4, 1997 for a major depression but did not include signs or findings in support of her diagnostic impression. The record also reveals that plaintiff underwent a consultative psychiatric evaluation by Dr. B. Diaz on June 10, 1998 whose diagnosis was major depression with psychosis. (T. 23). Her report indicated that plaintiff, at that time, was well oriented, logical, and relevant. (T. 24). Accordingly, three physicians confirmed a severe psychiatric diagnosis, all of whom actually performed a mental examination of the plaintiff.

   Notwithstanding the findings of his treating physician and the consultative psychiatrists, the ALJ instead relied on the hearing testimony of Dr. Jose Manuel Pou, a non-examining, non-treating psychiatrist to support his finding that plaintiff was

not disabled. The ALJ adopted Dr. Pou's conclusion from his review of the medical evidence that the plaintiff was in good contact with reality, and was logical, well oriented, coherent, with normal thought content. However, in doing so, he selectively ignored all of the evidence supporting plaintiff's claim of disability as reported by Drs. Hernandez, Babalonia and Diaz. The ALJ gave no explanation for disregarding the findings of plaintiff's treating and examining physicians indicating that plaintiff had poor concentration, inability to maintain social relationships, and a tendency to isolate himself. Instead the ALJ relied completely upon Dr. Pou's opinion which minimized those findings. In the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient. "Generally, we give more weight to the opinion of the source who has examined you than to the opinion of a source who has not examined you." See 20 C.F.R. § 404.1527(d)(1).

A psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record and, as in this instance, the observation of plaintiff while giving his testimony at his disability hearing. See Westphal v. Eastman Kodak Co., 2006 WL 1720380 *4, 5 (W.D.N.Y. 2006). The psychiatric treating model requires that a doctor treating a psychiatric patient conduct an interview, and

medical examination of the patient. Id. ("Because of the inherent subjectivity of a psychiatric diagnosis, and because a proper diagnosis requires a personal evaluation of the patient's credibility and affect, it is the preferred practice that a psychiatric diagnosis be made based upon a personal interview with the patient.") (citations omitted)

Therefore, in the context of a psychiatric evaluation, an opinion based on personal examination is inherently more reliable than an opinion based on the observation of the patient while giving his testimony and the review of opinions given by his treating and reviewing physicians. See Westphal, 2006 WL 1720380 at 5. Dr. Pou's observation of the plaintiff while testifying was no substitute for a personal examination and, therefore, his psychiatric opinion based on that limited experience is certainly less reliable than an opinion formed on the basis of a face-to-face, personal, confidential interview with the patient. The Social Security regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence. See 20 C.F.R. § 404.1527(d)(1). See also, Filocomo v. Chater, 944 F.Supp. 165, 170 n. 4 (E.D.N.Y. 1996) ("[[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight.") Accordingly, it was error for the ALJ to rely upon the opinion of Dr. Pou, a non-treating, non-examining doctor to the exclusion of the medical evidence in the record submitted by treating physicians in finding that plaintiff was not disabled.

### III. <u>The ALJ's Obligation To Fully Develop The Record Requires A Remand For Further Administrative Proceedings</u>

The ALJ found that the plaintiff retained the residual functional capacity to perform light, unskilled work activity that would afford him the opportunity to alternate positions while working.  (T. 26).  The ALJ determined, based upon the testimony of the vocational expert that there were a significant number of jobs in the national economy which he could perform including handpackager, cementer, and finisher of boots and shoes.  However, for the reasons set for below, I find that the ALJ erred by not giving appropriate weight to the medical opinions of the state agency consultant (Dr. Diaz) and plaintiff's treating physician (Dr. R. Rivera), both of whom reported a diagnosis of major depression which affected his claim of disability.[1]

---

[1] I find it disturbing that the ALJ excused Mr. Velazquez before receiving the testimony of Dr. Pou, expert psychiatrist.

"ALJ: That is all.  You [Velazquez] may leave.  We are going to listen the testimony by Dr. Jose Manuel Pou, who has been brought here today as medical expert to give us his opinion regarding his medical opinion about the evidence of record in this case."  (T. 403)

The ALJ continued after recognizing Dr. Pou as a psychiatrist:

"Question: Did you have the opportunity to examine the evidence of record and did you listen to the claimant's testimony here today?

Answer: Yes, sir.

Question: Doctor, what is the claimant's condition from the psychiatric point of view?"  (T. 404).

I find that improper weight was given to the opinion of the Commissioner's psychiatric expert and, therefore, further evidentiary proceedings are required to properly determine the plaintiff's claim of mental disability along with his other medical claims in determining whether the plaintiff was disabled

---

Dr. Pou then went on to comment on the medical record and the opinions of the treating physicians.

Dr. Pou concluded that plaintiff met or equaled the listing of impairments in 12.04 § 4 "Other" with symptoms of depression, crying episodes, anxiety and irritability. However, he concluded that he had light restrictions of daily activities from a mental point of view and difficulty in maintaining social functioning. He seldom had deficiencies in concentration, and never had any episodes of deterioration. The ALJ then asked:

"Question: Must I understand that [his] condition is one that is light?

Answer: Yes, even though it has been present and is present, it is a light condition. It is one of light severity."

The testimony of Camilo Gutierrez, the vocational expert followed. He responded to a hypothetical posed to him by the ALJ which completely adopted Dr. Pou's conclusion.

   "ALJ . . . If we took into consideration, the limitations imposed by Dr. Pou for the mental point of view, could he do any of the past relevant work? . . .

   Answer: He could do light, unskilled such as the handpacker. It is a light job, where he could alternate positions. It is unskilled. It is a simple job that consists of packaging products in the electronic industry."

Significantly, the last question to the VE,

   "Question: And, if we took into consideration the claimant's subjective complaints given here today, could he do those [light, unskilled] jobs?

   Answer: No, he could not."

in accordance with the Social Security Act. I find that the failure to properly evaluate the medical evidence in the Administrative record requires a remand of this case to the Commissioner for further development and analysis of the evidence. See Title 20 CFR 404.1512(e). See also Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998) (case properly remanded to the Social Security Administration for development and reassessment of the record).

I therefore grant plaintiff's motion to reverse the ALJ's decision and remand this case to the Commissioner for further development of the evidence in accordance with this Decision.

## CONCLUSION

For the reasons set forth above, I grant plaintiff's motion for remand and order that the Commissioner's determination denying benefits is vacated, and that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**ALL OF THE ABOVE IS SO ORDERED.**

                                    S/Michael A. Telesca
                                    MICHAEL A. TELESCA
                                  United States District Judge

Dated:   Rochester, New York
        November 1, 2007